# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

GEOFFREY H. ANDERSON,

      Plaintiff,

v.                                    Case No:  5:15-cv-26-Oc-30PRL

CITY OF GROVELAND, et al.,

      Defendants.

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon Lake County's Corrected Motion to Dismiss (Doc. 25) and Plaintiff's response in opposition (Doc. 32); the City of Groveland (the "City"), Officer John Moore, Officer Charles Russell, Officer John "Flinn" (Flynn), Officer Andy Auld, and Officer Scott Penvose's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (Doc. 22) and Plaintiff's response in opposition (Doc. 34); and Sheriff Gary S. Borders's Motion to Dismiss Amended Complaint (Doc. 23), Plaintiff's response in opposition (Doc. 33), and Sheriff Borders's reply (Doc. 38).  The Court, having reviewed the motions, responses, and other relevant pleadings, and being otherwise fully advised in the premises, concludes that Lake County and Sheriff Borders's motions to dismiss should be granted and the City and Officer Defendants' motion to dismiss should be granted in part and denied in part.

## **BACKGROUND**

Plaintiff's complaint contains the following facts which are accepted as true for the purposes of evaluating Defendants' motions to dismiss.

Plaintiff, who is proceeding pro se, alleges that on January 22, 2011, Officers John Flinn and Andy Auld from the Groveland Police Department ("GPD") conducted a "raid" on his residence located in Groveland, Florida.  According to Plaintiff, the officers, who did not have a search warrant, used intimidation and coercion to obtain Plaintiff's consent to search his home for a fugitive.  The following day, January 23, 2011, GPD Officer Scott Penvose returned to Plaintiff's home and obtained Plaintiff's consent to search his residence in a similar manner.

Plaintiff subsequently moved to a new residence for individuals fifty-five and older, also located in Groveland, Florida, where he shared a residence with Joseph Jurewicz, Jr. Plaintiff asserts that Mr. Jurewicz often caused disturbances resulting in officers from the GPD being repeatedly called to the residence.  The GPD officers warned Plaintiff that if they were called to the residence again, they would arrest everyone on the premises, including Plaintiff.

On August 5, 2011, in response to a call from a neighboring apartment falsely reporting a break-in, officers from the GPD, including GPD Officers John Moore and Charles Russell, broke through the window at Plaintiff's new residence, threw Plaintiff to the floor, kicked him, handcuffed him, and berated him with insults.  The officers then interrogated Plaintiff for an hour.  No charges were filed against Plaintiff as a result of this

incident.  On August 16, 2011, Plaintiff sent a "Notice of Claim" to the GPD Chief of Police.

On August 21, 2011, Officer Moore arrested Plaintiff without an arrest warrant while Plaintiff was sitting along a curb and charged him with thirteen felonies.[1]  According to Plaintiff, the arrest affidavit, prepared by Officer Moore, specifically noted that no physical evidence existed showing that Plaintiff committed the felonies.  Plaintiff asserts that Officer Moore was aware that the charges were unsubstantiated.  Due to the stress caused by the arrest, Plaintiff experienced chest pain and was transported to the hospital.  During his hospitalization, Plaintiff was shackled to the hospital bed by his feet and observed by GDP officers.

Plaintiff alleges that a first appearance was held on August 22, 2011, which he was unable to attend due to his hospitalization.  According to Plaintiff, the first appearance was not rescheduled.  Officer John Moore and a representative from the state attorney's office for the Fifth Judicial Circuit were present at the first appearance hearing.  Plaintiff was never given an opportunity to attend a first appearance hearing.

---

[1]Sheriff Borders submitted a copy of the arrest affidavit prepared by Officer Moore, which shows that Plaintiff was arrested based on three, not thirteen, felony charges, including battery, assault, and burglary.  (Doc. 23, Ex. 1).  The arrest affidavit is a matter of public record, which may be considered by the Court on a motion to dismiss.  *See Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993) ("In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." (internal quotation marks omitted)).

Once Plaintiff was released from the hospital and transported to the Lake County Detention Center,[2] he claims that jail personnel denied him proper medical care. He also alleges that the jail placed him in maximum security isolation and denied him use of a wheelchair. Without the wheelchair, Plaintiff was unable to move about his cell to retrieve food or take care of personal needs. Plaintiff contends that, as a result of the treatment he received, his ongoing physiological and psychological impairments were exacerbated, and he attempted suicide on the second day of his jail stay. After two days, the jail provided Plaintiff with a walker. After ten days, Plaintiff was released from maximum security isolation and moved to the medical ward.

On September 7, 2011, the state attorney for the Fifth Judicial Circuit issued a notice that no information would be filed against Plaintiff because the case could not be proven beyond a reasonable doubt. Plaintiff was released from jail on September 8, 2011. Plaintiff asserts that he was unable to walk unassisted out of the jail, and it was not until he was crawling on the floor that jail personnel provided him with a cane.

Plaintiff filed his original complaint on January 16, 2015, and requested to proceed *in forma pauperis*. (Doc. 1). The Court conducted a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and determined that it suffered from a number of pleading deficiencies, including, among other things, that several causes of action were frivolous or failed to state a claim and that the complaint named as defendants individuals immune from suit or entities not subject to suit. (Doc. 5). The Court provided

---

[2]Sheriff Borders is the sheriff of Lake County, Florida, and supervises the Lake County Detention Center.

Plaintiff with an opportunity to file an amended complaint and renew his motion to proceed *in forma pauperis*.  Plaintiff filed an amended complaint on May 1, 2015, and renewed his request to proceed *in forma pauperis*.  (Docs. 8, 9).  The Court granted Plaintiff's request, and Defendants were served with the amended complaint.  (Doc. 10).

Plaintiff's amended complaint asserts a total of thirteen claims against the Defendants arising from the events of January 22, 2011, through September 8, 2011, including Plaintiff's August 21, 2011 arrest and his seventeen-day jail stint.  (Doc. 8).  As relief, Plaintiff requests compensatory damages, punitive damages, and attorney's fees and costs.  (Doc. 8 at 36).  Lake County, the City along with the Officer Defendants, and Sheriff Borders have each filed a motion to dismiss Plaintiff's amended complaint for various reasons.  (Docs. 21, 22, 23).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In recognition of Plaintiff's pro se status, the Court affords Plaintiff wide latitude when construing his pleadings.  Although the Court holds Plaintiff as a pro se litigant to a

"a less stringent standard," Plaintiff may not rely on conclusory allegations or legal conclusions in the place of factual allegations to overcome a motion to dismiss. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## DISCUSSION

### A.  The City and the Officer Defendants' Motion to Dismiss

By his amended complaint, Plaintiff alleges the following claims against various subsets of the Officer Defendants: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983 against Officers Flinn and Auld regarding the January 22, 2011 search of Plaintiff's residence (Count I), (2) violation of the Fourth Amendment under § 1983 against Officer Penvose regarding the January 23, 2011 search of Plaintiff's residence (Count II), (3) violation of the Fourth Amendment under § 1983 against Officers Moore and Russell regarding entry of Plaintiff's residence on August 5, 2011 (Count III), and (4) violation of the Fourth Amendment under § 1983 for false arrest against Officer Moore with respect to Plaintiff's arrest on August 21, 2011 (Count IV).  (Doc. 8).  Plaintiff also alleges claims under Florida law against the City for (1) battery (Count VIII), (2) invasion of privacy (Count IX), (3) false arrest (Count X), (4) false imprisonment (Count XI), (5) malicious prosecution (Count XII), and (6) intentional infliction of emotional distress (Count XIII).

### 1. Section 1983 Claims against the Officer Defendants (Counts I-IV)

The Officer Defendants assert that Plaintiff's claims under § 1983 are conclusory and fail to contain factual allegations establishing a constitutional violation.  Because Plaintiff has not stated a constitutional violation, the Officer Defendants argue that they are entitled to qualified immunity.  Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a prima facie claim under § 1983, Plaintiff must establish that (1) the Officer Defendants' conduct caused the constitutional violation, and (2) the challenged conduct was committed "under color of state law." *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (internal quotation marks omitted).  "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'"  *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Kingsland*, 382 F.3d at 1232 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).   Once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his or her discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified

immunity should not apply because: (1) the officers violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).  "While qualified immunity is typically addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss." *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1151 (S.D. Fla. 2006) (citing *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)).

With respect to each § 1983 claim raised by Plaintiff, it is undisputed that the Officer Defendants were acting within their discretionary authority in investigating criminal activity and effectuating an arrest.  Thus, the determinative issue is whether Plaintiff's complaint demonstrates that the Officer Defendants violated a clearly established constitutional right.

Plaintiff's complaint contains insufficient factual allegations to establish that the Officer Defendants violated a constitutional right as to Counts I, II, and IV.  In Counts I and II, Plaintiff asserts claims against Officers Flinn, Auld, and Penvose, alleging that the officers violated the Fourth Amendment by obtaining Plaintiff's consent to search his home by coercion.  Plaintiff alleges that the officers "intimidated and threatened Plaintiff . . . with arrest," and coerced Plaintiff into allowing them to search his home.  (Doc. 8 at 7, 8).  But beyond this conclusory allegation, Plaintiff does not describe the conduct of the officers that was threatening or coercive such that he felt his will was overborne.  Because Plaintiff has not adequately alleged any facts showing that the officers' conduct in obtaining his consent to search his home violated the Fourth Amendment, Plaintiff has failed to state a § 1983 claim against Officers Flinn, Auld, and Penvose.

Similarly, with regard to Count IV, alleging false arrest in violation of the Fourth Amendment against Officer Moore, Plaintiff has failed to establish that Officer Moore lacked probable cause for the arrest.  Plaintiff asserts in a conclusory fashion that Officer Moore did not have probable cause to arrest him, but Plaintiff provides no facts regarding the circumstances surrounding his arrest.  Therefore, Plaintiff does not demonstrate that Officer Moore lacked probable cause for arresting him.  Plaintiff must provide sufficient factual allegations establishing the violation of a constitutional right.  He has failed to do so, and consequently has not stated a claim against Officer Moore for violation of the Fourth Amendment under § 1983.[3]

However, as to Count III, Plaintiff has sufficiently alleged a constitutional violation.  Plaintiff alleges that Officers Moore and Russell violated the Fourth Amendment by entering his home in response to a call from a neighbor reporting a break-in at Plaintiff's apartment.  Plaintiff asserts that the officers possessed no other facts justifying the entry of his home.  These facts, construed in the light most favorable to Plaintiff, are sufficient to state a violation of the Fourth Amendment against Officers Moore and Russell.  Thus, Officers Moore and Russell are not entitled to qualified immunity on this count at this stage of the proceedings.

---

[3]In fact, the arrest affidavit prepared by Officer Moore recounting the eyewitness reports from the victims allegedly assaulted, battered, and burglarized by Plaintiff would be a sufficient basis to establish probable cause precluding a claim for false arrest under § 1983.  (Doc. 23, Ex. 1).  "[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010); *see also Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990).  Plaintiff asserts that the victims' accusations were false, but provides no factual allegations demonstrating that the accusations were false or, more important, that Officer Moore had reason to believe the accusations were false.

Because Plaintiff has failed to adequately plead a violation of his constitutional rights as to Counts I, II, and IV, these claims should be dismissed.  However, Plaintiff will be given a final opportunity to amend these claims under § 1983 provided he can allege facts showing a constitutional violation and that would defeat the Officer Defendants' entitlement to qualified immunity.[4]  Count III may proceed as alleged.

### 2.  Battery against the City[5] (Count VIII)

Plaintiff alleges that the City is responsible for battery committed upon Plaintiff when Officers Moore and Russell apprehended Plaintiff in his residence on August 5, 2011, in response to a report of a break-in.  (Doc. 8 at 25-26).  Because Plaintiff asserts that the acts of Officers Moore and Russell were "willful, wanton, reckless, or malicious," the City contends that it cannot be held liable for the acts of the officers pursuant to Florida Statute § 768.28(9)(a), which provides: "The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."   Under Florida Statute § 768.28(9)(a), Florida has not waived

---

[4]In his responses, Plaintiff repeatedly asserts that his claims are supported by "corroborating documentation."  (Doc. 33 at 4; Doc. 34 at 4).  But Plaintiff has not incorporated this documentation into his complaint by filing copies with his complaint.  Since Plaintiff has not provided this documentation, his mere assertion that his claims are supported by documentation is insufficient to save his claims from dismissal.

[5]The City and Officer Defendants assert that Plaintiff's state law claims are barred because Plaintiff did not comply with Florida Statute § 768.28(6)(a) by providing notice of his claims to the appropriate state agency.  (Doc. 22 at 9).  Based on Plaintiff's allegations and the copy of the notice provided by Plaintiff (Doc. 26), the Court declines at this time to determine whether Plaintiff provided proper notice to the City and Officer Defendants.  The City and Officer Defendants may revisit this issue, if necessary.

sovereign immunity for the malicious, willful, or wanton acts of its employees.  Therefore,

the City is correct, and it is entitled to sovereign immunity from Plaintiff's claim of battery.

By way of explanation to Plaintiff, who appears to misunderstand the distinction

between an action against an officer in his or her individual and official capacities, an action

can be instituted against an officer in either the officer's individual capacity or official

capacity.  Florida Statute § 768.28(9)(a) provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall
> be held personally liable in tort or named as a party defendant in any action
> for any injury or damage suffered as a result of any act, event, or omission
> of action in the scope of her or his employment or function, unless such
> officer, employee, or agent acted in bad faith or with malicious purpose or in
> a manner exhibiting wanton and willful disregard of human rights, safety, or
> property. . . .  The exclusive remedy for injury or damage suffered as a result
> of an act, event, or omission of an officer, employee, or agent of the state or
> any of its subdivisions or constitutional officers shall be by action against the
> governmental entity, or the head of such entity in her or his official capacity,
> or the constitutional officer of which the officer, employee, or agent is an
> employee, unless such act or omission was committed in bad faith or with
> malicious purpose or in a manner exhibiting wanton and willful disregard of
> human rights, safety, or property.  The state or its subdivisions shall not be
> liable in tort for the acts or omissions of an officer, employee, or agent
> committed while acting outside the course and scope of her or his
> employment or committed in bad faith or with malicious purpose or in a
> manner exhibiting wanton and willful disregard of human rights, safety, or
> property.

Stated differently, an officer is entitled to immunity in his or her individual capacity

for conduct taken within the scope of his or her employment and not done with a "malicious

purpose or in a manner exhibiting wanton and willful disregard for human rights, safety,

or property," and this type of claim is more properly brought against an officer in his or

her official capacity, i.e., against the government entity of which the officer is an employee.

Fla. Stat. § 768.28(9)(a).  On the other hand, if the officer acted with "bad faith or with

malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property," the action is barred against the governmental entity and may only be brought against the officer individually.  *Id.*

Based on Plaintiff's allegations that Officers Moore and Russell acted with malicious purpose and their conduct was wanton and willful, the Court infers that Plaintiff intended to assert this claim of battery against the officers in their individual capacities. Plaintiff may therefore amend his claim for battery to assert the claim against Officers Moore and Russell in their individual capacities.  Plaintiff should be mindful that if he reasserts this claim against Officers Moore and Russell he should take care to allege specifically the acts each officer took in committing the alleged battery and should ensure that he alleges facts demonstrating that the officers acted with malicious purpose or that their conduct was wanton and willful.

### 3.  Invasion of Privacy against the City (Count IX)

Plaintiff asserts that Officers Moore and Russell violated his right to privacy when they entered his home on August 5, 2011, in response to a call from a neighbor reporting a break-in.  (Doc. 8, at 26-27).  It is unclear whether Plaintiff intends to assert a claim for invasion of privacy under article I, section 23 of the Florida Constitution, or seeks to assert a tort action for invasion of privacy.  As the City and Officer Defendants argue, under Florida law, a plaintiff cannot recover monetary damages for "governmental intrusion" into private life arising under the Florida Constitution because article I, section 23 of the Florida Constitution "fails to sufficiently delineate a rule by which the right to money damages can be determined, enjoyed, or protected."  *See Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st

DCA 1994), *approved*, 670 So. 2d 56 (Fla. 1996) (internal quotation marks omitted). But Florida does recognize a tort action for invasion of privacy, including for "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home." *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. 4th DCA 1980) (internal quotation marks omitted).

Because the basis of Plaintiff's claim cannot be determined from the amended complaint, this claim should be dismissed with leave to amend for Plaintiff to clarify the basis under which he alleges his right to privacy was violated. Additionally, Plaintiff is reminded that to the extent he alleges that Officers Moore and Russell's conduct was willful, wanton, or malicious, his claim cannot proceed against the City.

### 4. False Arrest and False Imprisonment against the City (Counts X-XI)

Plaintiff alleges that Officer Moore unlawfully detained him when he arrested him on August 21, 2011. (Doc. 8 at 27-30). Generally, under Florida law, false arrest and false imprisonment "are different labels for the same cause of action." *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1164 n.1 (Fla. 3d DCA 1981); *see also Andrews v. Fla. Parole Comm'n*, 768 So. 2d 1257, 1266 (Fla. 1st DCA 2000) (noting that false arrest and false imprisonment are "essentially the same tort") (Benton, J., concurring in part and dissenting in part); *but see Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010) ("False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods for committing false imprisonment."). Because Plaintiff's claims for false arrest and false imprisonment are based on identical allegations, the Court addresses them simultaneously.

13

False arrest is "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.  A plaintiff must show that the detention was unreasonable and unwarranted under the circumstances." *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997) (internal quotation marks and citation omitted).  Under Florida law, the existence of probable cause is an absolute bar to a claim for false arrest or false imprisonment.  *See Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996); *Miller v. City of Jacksonville*, 603 So. 2d 1310, 1312 (Fla. 1st DCA 1992); *see also Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990).  "Probable cause for an arrest exists when an eyewitness reports witnessing a crime to police."  *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008) (citing *United States v. Bell*, 457 F.2d 1231, 1238 (5th Cir. 1972)).[6]

Here, the arrest affidavit reflects that Plaintiff was arrested based on the eyewitness accounts of several individuals who were allegedly victimized by Plaintiff.  (Doc. 23, Ex. 1).  Plaintiff asserts that the account of the incidents by the victims was false, but he has provided no facts demonstrating that the victim's accounts were false or that Officer Moore had reason to doubt them.  On the facts as alleged in the amended complaint and supplemented by the arrest affidavit, it appears that probable cause existed for Plaintiff's arrest.

---

[6]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Because probable cause existed, Plaintiff's claims for false arrest and false imprisonment fail and should be dismissed.  However, Plaintiff will be given leave to amend his claims for false arrest and false imprisonment provided he can allege facts showing that Officer Moore lacked probable cause.  Additionally, as discussed previously regarding Plaintiff's claims of battery and invasion of privacy, Plaintiff's claim for false arrest cannot proceed against the City to the extent he contends that Officer Moore's conduct was malicious, willful, or wanton.  Plaintiff must determine whether he intends to assert this claim against Officer Moore in his individual capacity; in which case Plaintiff would have to allege facts establishing that Officer Moore acted in bad faith, maliciously, or in a wanton and willful manner.

### 5. Malicious Prosecution against the City (Count XII)

Plaintiff asserts a claim for malicious prosecution against the City based on Officer Moore's arrest of Plaintiff on August 21, 2011.  (Doc. 8 at 30-33).  Under Florida law, a plaintiff must allege the following elements to establish a claim for malicious prosecution: (1) a judicial proceeding was instituted or continued against the plaintiff, (2) the defendant commenced or caused the commencement of such proceeding, (3) the judicial proceeding had a bona fide termination in the plaintiff's favor, (4) there was no probable cause for initiating the proceeding, (5) the defendant acted maliciously, and (6) the plaintiff suffered damages as a result.  *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).  "If any one of the elements is lacking, an action for malicious prosecution will not lie."  *Union Oil of Cal. Amsco Div. v. Watson*, 468 So. 2d 349, 353 (Fla. 3d DCA 1985).

As an initial matter and as the Court previously explained to Plaintiff (Doc. 5), a claim for malicious prosecution cannot proceed against the City.  A claim for malicious prosecution requires as an element malicious conduct.  *See Mancusi*, 632 So. 2d at 1355. Pursuant to Florida Statute § 768.28(9)(a), governmental entities are immune from claims based on conduct of their employees that is motivated by a malicious purpose.  Because a claim for malicious prosecution requires proof of malicious conduct, Plaintiff's claim for malicious prosecution against the City should be dismissed with prejudice.  *See Johnson v. Fla. Dep't of Health & Rehabilitative Servs.*, 695 So. 2d 927, 930 (Fla. 2d DCA 1997).

To the extent Plaintiff intended to assert this claim against Officer Moore individually, Plaintiff's claim is defective on several fronts.  Plaintiff has first failed to establish that a judicial proceeding was commenced against him.  "In the case of a warrantless arrest, the judicial proceeding does not begin until the [defendant] is arraigned or indicted."  *Kingsland*, 382 F.3d at 1235.  Although Plaintiff was arrested, the charges against him were ultimately dropped and no judicial proceeding was ever commenced.

Even if a judicial proceeding had been commenced, Plaintiff has alleged no facts showing that Officer Moore commenced or caused to be commenced a judicial proceeding against Plaintiff.  An officer may be the legal cause of a judicial proceeding where it is shown that he or she had something to do with the decision to prosecute or improperly influenced that decision.  *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008).  Plaintiff has provided no facts demonstrating that Officer Moore had any influence over the decision to commence a judicial proceeding against Plaintiff.

Because Plaintiff could not state a claim for malicious prosecution against the City or Officer Moore, this claim is dismissed with prejudice, and Plaintiff will not be provided leave to amend.

**6. Intentional Infliction of Emotional Distress against the City (Count XIII)**

As the Court previously informed Plaintiff in ruling on Plaintiff's initial motion to proceed *in forma pauperis* (Doc. 5), because a claim for intentional infliction of emotional distress requires either intent or reckless conduct, which has been deemed equivalent to "willful and wanton conduct" as described in Florida Statute § 768.28(9)(a), this type of claim is barred by sovereign immunity. *See Zabriskie v. City of Kissimmee*, No. 6:10-cv-70-Orl-19KRS, 2010 WL 3927658, at *4 (M.D. Fla. Oct. 4, 2010); *see also Williams v. City of Minneola*, 619 So. 2d 983, 987 (Fla. 5th DCA 1993) (concluding that the "intentional or reckless" element of a claim for intentional infliction of emotional distress under Florida law equates to "wanton and willful" conduct for which Florida has not waived sovereign immunity). Thus, Plaintiff's claim for intentional infliction of emotional distress against the City is barred by sovereign immunity and should be dismissed with prejudice.

If Plaintiff intended his claim of intentional infliction of emotional distress to be directed against the Officer Defendants in their individual capacities, Plaintiff's claim is insufficiently pled. Under Florida law, a claim for intentional infliction of emotional distress requires a plaintiff to show (1) the conduct was intentional or reckless, (2) the conduct was outrageous, (3) the conduct caused emotional distress, and (4) the emotional distress was severe. *Horizons Rehabilitation, Inc. v. Healthcare & Retirement Corp.*, 810

So. 2d 958, 964 (Fla. 5th DCA 2002).  The issue of whether allegations rise to the required level of outrageous conduct is a question of law, not of fact, and is determined by the Court. *Ponton v. Scarfon*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985); *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990).  The standard for establishing outrageous conduct is extremely high. *See Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. 5th DCA 1980) (defining outrageous conduct as "extreme behavior, beyond all bounds of decency, atrocious and utterly intolerable in a civilized community").

Plaintiff asserts that the Officer Defendants are liable for intentional infliction of emotional distress related to their conduct (1) on January 22 and 23, 2011, when Officers Flinn, Auld, and Penvose searched Plaintiff's residence, (2) on August 5, 2011, when Officers Moore and Russell entered Plaintiff's residence, kicked Plaintiff, handcuffed him, and yelled insults at him, and (3) on August 21, 2011, when Officer Moore arrested Plaintiff.  As to the alleged conduct of the officers on January 22 and 23, 2011, and August 21, 2011, Plaintiff has not demonstrated that the officers' conduct was outrageous.  As to his claim of intentional infliction of emotional distress by the events of August 5, 2011, Plaintiff's factual allegations are too sparse to allow the Court to determine whether the conduct of Officers Moore and Russell surpassed the threshold of outrageousness.  For Plaintiff's claim to survive, he must plead it with more factual specificity.

Thus, Plaintiff's claim for intentional infliction of emotional distress against the City is dismissed.  Plaintiff may amend this claim to the extent he intended to assert it against Officers Moore and Russell related to the alleged incident on August 5, 2011.

### 7.  Punitive Damages

The City and the Officer Defendants also argue that Plaintiff is not entitled to recover punitive damages against them.  Since none of Plaintiff's claims against the City were adequately pled, whether Plaintiff could recover punitive damages against the City is moot.  For the record, however, punitive damages are not recoverable from a municipality under Florida law.  *See* Fla. Stat. § 768.28(5) (stating that "[t]he state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, *but liability shall not include punitive damages*" (emphasis added)).

With respect to Plaintiff's § 1983 claims against the Officer Defendants, punitive damages are available "under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  However, if Plaintiff files a second amended complaint, he is encouraged to more specifically allege the damages he seeks to recover from each defendant.

## B.  Sheriff Borders's Motion to Dismiss & Lake County's Motion to Dismiss

Because Plaintiff's claims against Sheriff Borders and Lake County are essentially parallel and based upon the same conduct, the Court addresses these motions simultaneously.  Plaintiff alleges claims against Sheriff Borders in his official capacity and Lake County for (1) violation of the Fifth Amendment under § 1983 related to his inability

to attend a first appearance hearing (Count V),[7] (2) violation of the Sixth Amendment under § 1983 for deprivation of counsel caused by the lack of a first appearance (Count VI), and (3) violation of the Fourteenth Amendment under § 1983 for deliberate indifference to a serious medical need (Count VII).  Plaintiff also asserts claims under Florida law against Lake County for (1) malicious prosecution (Count XII), and (2) intentional infliction of emotional distress (Count XIII).

As a preliminary matter, Lake County argues that it is not a proper party to this action.  (Doc. 25).  Rather, Lake County asserts that Sheriff Borders alone is the proper party because Sheriff Borders is an independent constitutional officer who has final policymaking authority and control over the employees of the Lake County Detention Center where Plaintiff was held.  As discussed below in greater detail, however, Plaintiff has failed to state a prima facie claim against Lake County under § 1983 or Florida law for malicious prosecution or intentional infliction of emotional distress.  It is therefore unnecessary to determine at this time whether Lake County is properly named as a defendant.

**1.   Section 1983 Claims against Sheriff Borders and Lake County (Counts V-VII)**

Both Sheriff Borders and Lake County contend that Plaintiff's claims against them under § 1983 should be dismissed because Plaintiff has not alleged that the deprivation of

---

[7]The Fifth Amendment applies only to deprivation of due process by the federal government; the Fourteenth Amendment applies to the states.  *See Buxton v. City of Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989).  The Court therefore construes Plaintiff's claim for deprivation of due process as brought pursuant to the Fourteenth Amendment instead of the Fifth Amendment.

his constitutional rights was the result of a policy, custom, or practice of the Sheriff's Office or Lake County.  A governmental entity, such as Sheriff Borders and Lake County, cannot be held liable for the constitutional violations of its employees on a theory of vicarious liability.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  A local government is, however, liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.  The official policy or custom may be established by identifying an officially promulgated policy or by identifying an unofficial policy shown by persistent and widespread practice.  *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).  Generally, "random acts and isolated incidents" are not enough to establish municipal or governmental liability pursuant to a policy, custom, or practice.  *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (internal quotation marks omitted).

To attribute liability to Sheriff Borders or Lake County under § 1983, Plaintiff must demonstrate that Sheriff Borders or Lake County had in place an official policy or custom that was "the moving force of the constitutional violation." *Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993) (internal quotation marks omitted).  With regard to each of Plaintiff's counts against Sheriff Borders and Lake County under § 1983, Plaintiff has not alleged with specificity that the deprivation of his rights was caused by an official policy, custom, or practice.  Rather Plaintiff asserts, in a conclusory fashion, that the acts of the officers, agents, and employees of the Sheriff's Office were taken pursuant to an official policy, practice, or custom, but he fails to bolster his conclusion with any factual

21

allegations.  (Doc. 8 at 7).  The allegations of the complaint show nothing more than isolated wrongdoings.  Accordingly, Plaintiff has failed to establish a prima facie case under § 1983 against Sheriff Borders or Lake County and his claims should be dismissed.

Additionally, as to Plaintiff's claim that Sheriff Borders and Lake County violated his Sixth Amendment right to counsel by failing to provide him with a first appearance (Count VI), Plaintiff's claim fails on the merits.  The Sixth Amendment guarantees the right to the assistance of counsel for the preparation and presentation of a defense, including any ancillary proceedings prior to a trial.  *See Sanchez v. Campbell*, No. 4:09-CV-420-SPM-WCS, 2010 WL 547620, at *2 (N.D. Fla. Feb. 10, 2010).  It does not guarantee the right to a first appearance within a specified amount of time.  *Id.*; *see also United States v. Montaner*, No. 10-20289-CR, 2012 WL 442985, at *5 (S.D. Fla. Jan. 23, 2012) (noting that the "right [to counsel] attaches 'at or after the initiation of adversary judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).  Plaintiff's assertion that he was deprived of assistance of counsel by the alleged deprivation of a first appearance is not cognizable under the Sixth Amendment and therefore fails as a matter of law.  This claim should be dismissed with prejudice.

### 2.  Malicious Prosecution against Lake County (Count XII)

Just as Plaintiff's claim for malicious prosecution was barred against the City under Florida Statute § 768.28(9)(a), Plaintiff's claim for malicious prosecution against Lake County is also barred by Florida Statute § 768.28(9)(a).  *See Johnson*, 695 So. 2d at 930.  In his response to Lake County's motion to dismiss, Plaintiff recognizes that this claim is

barred against Lake County; albeit under a different theory.  (Doc. 32 at 5, 11).  Thus, Plaintiff's claim for malicious prosecution is dismissed with prejudice against Lake County.

### 3.  Intentional Infliction of Emotional Distress (Count XIII)

Although Sheriff Borders is not named as a defendant with regard to Plaintiff's state-law claim for intentional infliction of emotional distress, Sheriff Borders argues that to the extent Plaintiff's allegations are directed at the conduct of Sheriff's Office employees, Plaintiff has failed to state a claim against Sheriff Borders for intentional infliction of emotional distress.[8]  First, Sheriff Borders asserts that Plaintiff did not provide notice of the claim as required by Florida Statute § 768.28(6)(a), which directs that "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues."  Plaintiff asserts that he sent notice to the City, but does not assert that he sent such notice to Sheriff Borders or Lake County.  Plaintiff also provided a copy of the notice to the Court (Doc. 26), and it reflects that the notice was not provided to Sheriff Borders or Lake County.  Any state-law claims against Sheriff Borders and Lake County are barred by Plaintiff's failure to comply with Florida Statute § 768.28(6)(a).

---

[8]In the complaint, Plaintiff only identifies the City and Lake County as defendants with respect to his claim for intentional infliction of emotional distress.  But in his response to Sheriff Borders's motion to dismiss, Plaintiff asserts that Sheriff Borders and Lake County are also defendants as to that count.  (Doc. 33 at 11).

Even if Plaintiff complied with Florida Statute § 768.28(6)(a), Sheriff Borders argues that he is entitled to sovereign immunity under Florida Statute § 768.28(9)(a).  As discussed above regarding Plaintiff' claim for intentional infliction of emotional distress against the City, Plaintiff's claim for intentional infliction of emotional distress is similarly barred by sovereign immunity against Sheriff Borders and Lake County.  *See Zabriskie*, 2010 WL 3927658, at *4; *see also Williams*, 619 So. 3d at 986-87 (concluding that the "intentional or reckless" element of a claim for intentional infliction of emotional distress under Florida law equates to "wanton and willful" conduct for which Florida has not waived sovereign immunity).  Thus, Plaintiff's claim for intentional infliction of emotional distress fails against both Sheriff Borders and Lake County and should be dismissed with prejudice.

In his responses to the motions to dismiss, Plaintiff recognizes that his claim for intentional infliction of emotional distress cannot proceed against Sheriff Borders or Lake County, and he consents to its dismissal.  (Doc. 32 at 11-12; Doc. 33 at 11).  Instead Plaintiff requests permission to file a second amended complaint adding a claim for negligence against Sheriff Borders and Lake County.  (Doc. 32 at 12; Doc. 33 at 11).  However, as discussed above, Plaintiff did not provide notice to Sheriff Borders or Lake County regarding his claims as required by Florida Statute § 768.28(6)(a).  Because the time for filing such notice has expired, this deficiency cannot be cured and any Florida law claims asserted against Sheriff Borders or Lake County would be barred.  Plaintiff's request to add a claim for negligence against Sheriff Borders and Lake County is therefore denied.

### 4. Punitive Damages

Last, both Sheriff Borders and Lake County request that Plaintiff's claims for punitive damages be stricken because Plaintiff is not entitled to punitive damages against a governmental entity.  Neither federal law nor Florida law permits the recovery of punitive damages against a municipality.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (holding that a sheriff's department is immune from punitive damages on a § 1983 claim); Fla. Stat. § 768.28(5) (stating that "[t]he state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages").  Sheriff Borders's and Lake County's requests to strike Plaintiff's claims for punitive damages should be granted.

### CONCLUSION

Most of the claims contained in Plaintiff's amended complaint are deficient and should be dismissed, some with prejudice and some without.  Plaintiff may file a second amended complaint limiting his allegations to the facts pertinent to Counts I, II, III, IV, V, VII, VIII, IX, X, XI, and XIII, and within the limitations as described above.  Plaintiff should refrain from incorporating all allegations of the complaint into each count, referencing only the allegations pertinent to the claim contained in that count.  Plaintiff should also clearly describe how each defendant is involved in each alleged constitutional violation or tortious act and what relief he seeks from each defendant.

Plaintiff is cautioned that § 1983 claims against municipalities, which in this case include the City, Lake County, and Sheriff Borders in his official capacity, require Plaintiff to allege facts showing that the deprivation of his constitutional right was the result of a policy, custom, or practice of the municipality.

Plaintiff is also warned that the Court will not tolerate disrespectful behavior toward opposing counsel.  (See Doc. 34 at 3 (suggesting that "opposing counsel has difficulty with the English language")).  Pleadings filed with the Court shall be respectful and pertain only to the legal and factual disputes at issue.

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.  Lake County's Corrected Motion to Dismiss (Doc. 25) is GRANTED.

2.  The City of Groveland, Officer John Moore, Officer Charles Russell, Officer John "Flinn" (Flynn), Officer Any Auld, and Officer Scott Penvose's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (Doc. 22) is GRANTED in part and DENIED in part.

3.  Sheriff Gary S. Borders's Motion to Dismiss Amended Complaint (Doc. 23) is GRANTED.

4.  Count III is the only count of the amended complaint that is not dismissed.  The following claims of Plaintiff's amended complaint are dismissed WITHOUT PREJUDICE: Counts I, II, IV, V, VII, VIII, IX, X, XI, and XIII.

5.  The following claims are dismissed WITH PREJUDICE: Counts VI and XII.

6.  Plaintiff's request to add a claim for negligence against Sheriff Borders and Lake County is DENIED.

26

7.   Plaintiff's claims for punitive damages against Sheriff Borders, the City, and Lake County are STRICKEN.

8.   Within thirty (30) days of the date of this Order, Plaintiff may file a second amended complaint correcting the deficiencies noted above, if possible, as to Counts I, II, IV, V, VII, VIII, IX, X, XI, and XIII.

9.   If Plaintiff does not file a second amended complaint within thirty (30) days, this case will proceed as to Count III only and Officers Moore and Russell shall file an answer to Count III of the amended complaint within fourteen (14) days of the expiration of Plaintiff's deadline for filing a second amended complaint.

**DONE** and **ORDERED** in Tampa, Florida, this 2nd day of November, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record