**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

GEOFFREY H. ANDERSON,

      Plaintiff,

v.                                                                    Case No:  5:15-cv-26-Oc-30PRL

CITY OF GROVELAND, et al.,

      Defendants.

_____/

# ORDER

      THIS CAUSE comes before the Court upon Lake County's Motion to Dismiss (Doc. 53) and Plaintiff's response (Doc. 64); the City of Groveland (the "City"), Officer John Moore, Officer Charles Russell, Officer John "Flinn" (Flynn), Officer Andy Auld, and Officer Scott Penvose's Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice (Doc. 56) and Plaintiff's response in opposition (Doc. 64).  The Court, having reviewed the motions, responses, and other relevant pleadings, and being otherwise fully advised in the premises, concludes that Lake County's motion should be granted and the City and Officer Defendants' motion to dismiss should be granted in part and denied in part.

# BACKGROUND

      Plaintiff's second amended complaint contains the following facts which are accepted as true for the purposes of evaluating the motions to dismiss.

Plaintiff, who is proceeding pro se, alleges that on January 22, 2011, Officers John Flinn and Andy Auld from the Groveland Police Department ("GPD") conducted a search of his residence located in Groveland, Florida. According to Plaintiff, the officers, who did not have a search warrant, told Plaintiff that he would be arrested for obstructing an officer if he did not permit the search of his residence. Plaintiff acquiesced to the search because he did not want to be arrested. The following day, January 23, 2011, GPD Officer Scott Penvose returned to Plaintiff's home and obtained Plaintiff's consent to search his residence by threatening to arrest Plaintiff for obstructing an officer if he did not permit the search.

Plaintiff subsequently moved to a new residence for individuals fifty-five and older, also located in Groveland, Florida, where he shared a residence with Joseph Jurewicz, Jr. Plaintiff asserts that Mr. Jurewicz often caused disturbances resulting in officers from the GPD being repeatedly called to the residence. The GPD officers warned Plaintiff that if they were called to the residence again, they would arrest everyone on the premises, including Plaintiff.

On August 5, 2011, in response to a call from a neighboring apartment reporting a break-in, officers from the GPD, including GPD Officers John Moore and Charles Russell, broke through the window at Plaintiff's new residence, threw Plaintiff to the floor, kicked him, handcuffed him, and berated him with insults. The officers then interrogated Plaintiff for an hour. No charges were filed against Plaintiff as a result of this incident. On August 16, 2011, Plaintiff sent a "Notice of Claim" to the GPD Chief of Police.

On August 21, 2011, Plaintiff visited a home on 372 Beach Street.  Plaintiff was standing on the front porch of the home when Chris Craig, another visitor, starting taunting Plaintiff.  Plaintiff retrieved his bag and was leaving the premises when he was confronted by several individuals from the home who insulted him, threw a full soda can at him, and pushed him.  Plaintiff walked four blocks away from the home and sat down along a curb. About twenty minutes later, Officer Penvose arrived and told Plaintiff that the GPD received a call that Plaintiff was causing a disturbance on Beach Street.  Officer Penvose arrested Plaintiff and transported him to the GPD jail.   While at the jail, Plaintiff experienced chest pain and was transported to the hospital.  During his hospitalization, Plaintiff was shackled to the hospital bed by his feet and observed by GPD officers.

Plaintiff alleges that a first appearance was held on August 22, 2011, which he was unable to attend due to his hospitalization.  According to Plaintiff, the first appearance was not rescheduled.  Officer John Moore and a representative from the state attorney's office for the Fifth Judicial Circuit were present at the first appearance hearing.  Plaintiff was never given an opportunity to attend a first appearance hearing.

Once Plaintiff was released from the hospital and transported to the Lake County Detention Center,[1] he claims that jail personnel denied him proper medical care.  He also alleges that the jail placed him in maximum security isolation and denied him use of a wheelchair.  Without the wheelchair, Plaintiff was unable to move about his cell to retrieve food or take care of personal needs.  Plaintiff was also denied access to his medications

---

[1]Sheriff Borders is the sheriff of Lake County, Florida, and supervises the Lake County Detention Center.

because the jail maintained a policy that medical treatment would not be provided to a detainee until the jail obtained the detainee's medical records.  Plaintiff contends that, as a result of the treatment he received, his ongoing physiological and psychological impairments were exacerbated, and he attempted suicide on the second day of his jail stay. After two days, the jail provided Plaintiff with a walker.  After ten days, Plaintiff was released from maximum security isolation and moved to the medical ward.

On September 7, 2011, the state attorney for the Fifth Judicial Circuit issued a notice that no information would be filed against Plaintiff because the case could not be proven beyond a reasonable doubt.  Plaintiff was released from jail on September 8, 2011.  Plaintiff asserts that he was unable to walk unassisted out of the jail, and it was not until he was crawling on the floor that jail personnel provided him with a cane.

Plaintiff filed his original complaint on January 16, 2015, and requested to proceed *in forma pauperis*.  (Doc. 1).  The Court conducted a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and determined that it suffered from a number of pleading deficiencies, including, among other things, that several causes of action were frivolous or failed to state a claim and that the complaint named as defendants individuals immune from suit or entities not subject to suit.  (Doc. 5).  The Court provided Plaintiff with an opportunity to file an amended complaint and renew his motion to proceed *in forma pauperis*.  Plaintiff filed an amended complaint on May 1, 2015, and renewed his request to proceed *in forma pauperis*.  (Docs. 8, 9).  The Court granted Plaintiff's request, and Defendants were served with the amended complaint.  (Doc. 10).

4

Plaintiff's amended complaint asserted thirteen claims against Defendants arising from the events of January 22, 2011, through September 8, 2011, including Plaintiff's August 21, 2011 arrest and his seventeen-day jail stint.  (Doc. 8).  Lake County, the City and Officer Defendants, and Sheriff Borders each filed a motion to dismiss Plaintiff's amended complaint.  (Docs. 21, 22, 23).  The Court dismissed all counts of Plaintiff's amended complaint except Count III, but provided Plaintiff leave to amend Counts I, II, IV, V, VII, VIII, IX, X, XI, and XIII.[2]  (Doc. 50).  Plaintiff filed a second amended complaint on December 3, 2015.  (Doc. 51).  Plaintiff seeks to recover compensatory damages, punitive damages, attorney's fees, and costs against each defendant.  (Doc. 51 at 60).  Lake County and the City and Officer Defendants now seek to dismiss Plaintiff's second amended complaint.  (Docs. 53, 56).  Sheriff Borders filed an answer and affirmative defenses on December 10, 2015, to Counts V and VII.  (Doc. 52).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are

---

[2]Counts VI and XII were dismissed with prejudice.  (Doc. 50).

not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In recognition of Plaintiff's pro se status, the Court affords Plaintiff wide latitude when construing his pleadings.  Although the Court holds Plaintiff as a pro se litigant to a "a less stringent standard," Plaintiff may not rely on conclusory allegations or legal conclusions in the place of factual allegations to overcome a motion to dismiss.  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## DISCUSSION

### A.  Lake County's Motion to Dismiss (Doc. 53)

Plaintiff asserts two claims against Lake County under 42 U.S.C. § 1983 arguing constitutional violations on the basis of his deprivation of the right to counsel by failure to provide an initial appearance and deprivation of proper medical care during his detention in the Lake County Detention Center (Counts V, VII).  (Doc. 51).  By its motion to dismiss, Lake County asserts, among other things, that it does not control the day-to-day operations of the Lake County Detention Center and that Sheriff Borders is an independent constitutional officer who has absolute control over the employees of the Lake County Detention Center.  (Doc. 53).  Plaintiff concedes that Sheriff Borders is the appropriate defendant and consents to dismissal of Lake County as a defendant.  (Doc. 64). Accordingly, Lake County's motion to dismiss is granted and Lake County is dismissed as a defendant in this case.

**B.  The City and the Officer Defendants' Motion to Dismiss (Doc. 56)**

By his second amended complaint, Plaintiff alleges the following claims against various subsets of the Officer Defendants: (1) violation of the Fourth Amendment under § 1983 against Officers Flinn and Auld regarding the January 22, 2011 search of Plaintiff's residence (Count I), (2) violation of the Fourth Amendment under § 1983 against Officer Penvose regarding the January 23, 2011 search of Plaintiff's residence (Count II), (3) violation of the Fourth Amendment under § 1983 against Officers Moore and Russell regarding entry of Plaintiff's residence on August 5, 2011 (Count III), (4) violation of the Fourth Amendment under § 1983 for false arrest against Officer Moore with respect to Plaintiff's arrest on August 21, 2011 (Count IV), (5) battery against Officers Moore and Russell related to the August 5, 2011 incident (Count VIII), (6) invasion of privacy against Officers Moore and Russell related to the August 5, 2011 incident (Count IX), (7) false arrest against Officer Moore related to Plaintiff's August 21, 2011 arrest (Count X), (8) false imprisonment against Officer Moore related to Plaintiff's August 21, 2011 arrest (Count XI), and (9) intentional infliction of emotional distress against Officer Moore (Count XIII).  (Doc. 51).

**1. Section 1983 Claims against the Officer Defendants (Counts I-IV)**

Among other things, the Officer Defendants assert that Plaintiff's claims under § 1983 are conclusory and fail to contain factual allegations establishing a constitutional violation.  Because Plaintiff has not stated a constitutional violation, the Officer Defendants argue that they are entitled to qualified immunity.  Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a prima facie claim under § 1983, Plaintiff must establish that (1) the Officer Defendants' conduct caused the constitutional violation, and (2) the challenged conduct was committed "under color of state law." *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (internal quotation marks omitted).  "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Kingsland*, 382 F.3d at 1232 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  Once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his or her discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified

immunity should not apply because: (1) the officers violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).  "While qualified immunity is typically addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss." *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1151 (S.D. Fla. 2006) (citing *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)).

With respect to each § 1983 claim raised by Plaintiff, it is undisputed that the Officer Defendants were acting within their discretionary authority in investigating criminal activity and effectuating an arrest.  Thus, the determinative issue is whether Plaintiff's second amended complaint demonstrates that the Officer Defendants violated a clearly established constitutional right.

### i.  Counts I & II—Unreasonable Searches

In Counts I and II, Plaintiff asserts claims under § 1983 against officers Flinn, Auld, and Penvose arguing that they searched his home on two occasions in violation of the Fourth Amendment.  Although Plaintiff consented to the searches, he alleges that his consent was not voluntary because the officers threatened to arrest Plaintiff if he did not permit the search.

As to Count I, the second amended complaint alleges the following facts: officers from the GPD (Officers Flinn & Auld)[3] arrived at Plaintiff's residence on January 22, 2011,

---

[3]As the Officer Defendants highlight, Officers Flinn and Auld are not identified by name when Plaintiff is describing the facts which support his claim for Count I.  Rather, that Officers Flinn and Auld were the officers who allegedly committed this violation is inferred from the fact that Officers Flinn and Auld are named by Plaintiff in Count I.

and informed Plaintiff that they were looking for "Russell Drawdy."  When Plaintiff told the officers that he did not know Russell Drawdy, the officers informed Plaintiff that they believed he was hiding in Plaintiff's home and told Plaintiff that they wanted to search his residence.  Plaintiff told the officers that they could not search his home without a warrant.  An officer then asked Plaintiff, "Are you going to let us search your house, or are we going to have to arrest you?"  (Doc. 51 at 10, ¶ 41).  When Plaintiff asked what he would be arrested for, the officer responded that the arrest would be for "obstructing an officer" and "interfering in a criminal investigation."  (*Id.*, ¶ 42).  When Plaintiff asked for further explanation, the officers said "we don't have to explain ourselves to you.  Now, we can go round and round on this, but we will gladly arrest you, put you in jail, and then we can get a search warrant to search your house."  (*Id.* at 11, ¶ 45).  Plaintiff told the officers that he believed they were trying to coerce him and that they needed a search warrant, but he acquiesced to the search.  The officers did not find Mr. Drawdy in Plaintiff's house.

Plaintiff vaguely refers to Officers Auld and Flinn as "officer" and a "male police officer," and "another male officer."  In Plaintiff's response, he essentially states that he did not specifically identify which officer took which actions because the officers did not identify themselves and he suggests that he should not bear the burden to identify the actions taken by Officers Auld and Flinn.[4]  (Doc. 64 at 4-5).  The Court disagrees.

---

[4]Plaintiff asserts that he named Officers Flinn and Auld as defendants because they were listed as "backup" on the "call for service" placed on January 22, 2011.  (Doc. 64 at 5).  Plaintiff appears to be indicating that he is not even sure if Officers Flinn and Auld are the correct defendants.

"To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, *but* must give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*" *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (internal citations and quotation marks omitted) (emphasis added). By failing to identity which officer took which actions, Plaintiff has failed to put Officers Flinn and Auld on notice of the grounds upon which Plaintiff's claim rests. Plaintiff cannot simply assert vague allegations of fact that fail to apprise each defendant as to which allegedly unlawful actions were taken on the off chance that the facts apply to at least one of the defendants.

The Court previously cautioned Plaintiff he needed to "clearly describe how each defendant is involved in each alleged constitutional violation or tortious act and what relief he seeks from each defendant." (Doc. 50 at 25). Plaintiff has failed to fulfill this requirement as to Count I. Having given Plaintiff several opportunities to amend his complaint, the court need not determine whether the officers are entitled to qualified immunity, and this claim is dismissed with prejudice.

Unlike Count I, in Count II, Plaintiff specifically identifies Officer Penvose and the specific actions taken by him. Namely, Plaintiff alleges: On January 23, 2011, Officer Penvose came to Plaintiff's house looking for Russell Drawdy. Plaintiff told Officer Penvose that GPD officers were at his house the day before and searched his home for Russell Drawdy. Officer Penvose told Plaintiff that he would "search his house, period." (*Id.* at 12, ¶ 56). Plaintiff asked if Officer Penvose had a search warrant, and Officer Penvose responded that he did not need one. Plaintiff informed Officer Penvose that "[t]he law requires you to have a search warrant." (*Id.*, ¶ 57). Officer Penvose told Plaintiff that

if he did not allow the search he would be arrested for obstruction of justice, so Plaintiff allowed the search of his house.  Russell Drawdy was not found.

It is well-established that a warrantless search of an individual's home is presumed to be unreasonable and a violation of the Fourth Amendment.  *See Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003).  But it is equally well-established that a warrantless search conducted pursuant to voluntary consent is constitutional.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).  "[T]o be considered voluntary, . . . consent to search 'must be the product of an essentially free and unconstrained choice.'"  *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999) (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)).  Whether consent is voluntary, and not the result of coercion, express or implied, is assessed pursuant to the totality of the circumstances.  *Id.* at 248.  Relevant factors include "whether the person is in custody, the existence of coercion, the person's awareness of his right to refuse consent, the person's education and intelligence, and whether person believes that incriminating evidence will be found."  *Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1326 (11th Cir. 2008) (citing *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989)).

Plaintiff's facts supporting his claim that his consent was involuntary are thin, but not so thin that Plaintiff has failed to assert a plausible claim for relief.  According to Plaintiff's version of the facts, he was peaceably speaking to Officer Penvose and had not committed a violation of the law when Officer Penvose told Plaintiff that he was going to search his home.  Although Plaintiff protested and demanded a search warrant, Officer Penvose threatened to arrest Plaintiff for obstruction of justice if he did not comply.  At

this time, upon the facts provided by Plaintiff, the court is unable to make a "heavily fact-dependent" inquiry into the totality of the circumstances of Plaintiff's consent and determine whether his consent was voluntary.

This is not to say that Officer Penvose might not be entitled to qualified immunity at the summary judgment stage. Rather, at the present juncture, the Court possesses insufficient facts to assess the voluntariness of Plaintiff's consent. Count II will not be dismissed.

### ii. Count III—Unreasonable Search

Defendants ask that the Court reconsider its decision not to dismiss Count III. In Count III, Plaintiff alleges that Officers Moore and Russell violated the Fourth Amendment when they entered his home in response to a call from a neighbor that a burglary was being committed in Plaintiff's residence. (Doc. 51 at 29-30). It is well-established that the Fourth Amendment prohibits a warrantless entry of an individual's home. *Payton v. New York*, 445 U.S. 573, 586 (1980). However, an exception exists if there are exigent circumstances. Exigent circumstances arise when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for *immediate* action." *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir. 1984), *superseded on other grounds by statute as recognized by United States v. Edwards*, 728 F.3d 1286, 1292 (11th Cir. 2013) (citing *United States v. Burgos,* 720 F.2d 1520 (11th Cir. 1983)). To justify the warrantless entry into a home under the exigent circumstances exception, there must be both probable cause and exigent circumstances. *United States v. Rodgers*, 924 F.2d 219, 222 (11th Cir. 1991).

In the present case, Plaintiff asserts that Officers Moore and Russell entered his home in response to a call from a neighbor reporting a burglary in progress.  A burglary in progress may present an exigent circumstance justifying a warrantless entry so long as the officers possess probable cause to believe a burglary is taking place.  *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983).  Taking the facts alleged in the light most favorable to Plaintiff, the only evidence of a burglary possessed by the officers was the call from Plaintiff's neighbor reporting a burglary.

Under Florida law, probable cause exists to believe a burglary is being committed if the totality of the circumstances support the likelihood that a burglary may be in progress. *See Florida v. Yee*, 177 So. 3d 72, 76 (Fla. 3d DCA 2015); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. 4th DCA 1980); *cf. United States v. Porter*, 288 F. Supp. 716, 720-21 (W.D. Va. 2003) (summarizing cases where the totality of the circumstances demonstrated the likelihood of a burglary in progress justifying a warrantless entry under the exigent circumstances exception).  For example, such circumstances may include physical indication of forced entry, i.e., an open door, broken window, tool marks around a door or window, evidence of other burglaries or crimes nearby, or knowledge that the residence's usual occupants are not home.  *See Yee*, 177 So. 2d at 76; *Guin*, 388 So. 2d at 606; *cf. Dockery v. Doyle*, 237 F. App'x 426, 428-29 (11th Cir. 2007) (concluding that probable cause existed to believe a burglary was in progress where there was a visibly unsecured door, rampant burglaries and crimes in the same complex, noises were heard in the residence, and there were "small tool marks on the doorframe, which appeared to be indicative of the use of some small, sharp tool").

Because the information possessed by the officers was only a tip from a neighbor, and, at the present time, there is no indication that the officers possessed corroborating information that a burglary was in progress, Plaintiff has demonstrated a constitutional violation.

Next, the Court must consider whether the right was clearly established such that a reasonable officer would be aware that his conduct violated a constitutional right.   As discussed above, the principles involving exigent circumstances and probable cause are clearly established and control the instant case.   Because Plaintiff has demonstrated the violation of a clearly established constitutional right at this stage of the proceedings, dismissal is not warranted.

However, as with Count II, that is not to say that the officers might not be entitled to qualified immunity at the summary judgment stage.   Rather, currently, the facts do not warrant the application of qualified immunity.

### iii.  Count IV—False Arrest

In Count IV, Plaintiff asserts a claim of false arrest in violation of the Fourth Amendment against Officer Moore, but Plaintiff has failed to establish a constitutional violation because he has not demonstrated that Officer Moore lacked arguable probable cause for the arrest.

A warrantless arrest made without probable cause violates the Fourth Amendment and is actionable under both federal and state law.  *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).  "[B]ut the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."  *Brown v. City of*

*Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010); *see also Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990).  An officer has probable cause for an arrest when the arrest is "objectively reasonable based on the totality of the circumstances." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (internal quotation marks omitted).  In determining whether an arrest is objectively reasonable, thereby triggering qualified immunity, the issue is whether the officer had arguable probable cause.  *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (explaining that "arguable probable cause . . . is all that is required for qualified immunity to be applicable to an arresting officer").  "Arguable probable cause" is a lower standard than actual probable cause and only requires that "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

Officer Moore prepared an arrest affidavit recounting eyewitness reports from the victims allegedly assaulted, battered, and burglarized by Plaintiff.[5]  These eyewitness/victim statements would be a sufficient basis to establish arguable probable cause precluding a claim for false arrest under § 1983.  *See Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998) (stating that an officer is entitled to rely on a victim's statement

---

[5]Sheriff Borders submitted a copy of the arrest affidavit prepared by Officer Moore, which shows that Plaintiff was arrested based on three, not thirteen, felony charges, including battery, assault, and burglary.  (Doc. 23, Ex. 1).  The arrest affidavit is a matter of public record, which may be considered by the Court on a motion to dismiss.  *See Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993) ("In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." (internal quotation marks omitted)).

or criminal complaint as support for probable cause); *see also Chancey v. Wells*, No. 8:04-cv-1884-T-24MSS, 2005 WL 2663492, at *5 (M.D. Fla. Oct. 19, 2005) ("A police officer is generally entitled to rely on a victim's criminal complaint as support for probable cause.").

Plaintiff asserts that the victims' accusations were false, but does not demonstrate that Officer Moore had reason to believe the accusations were false. To demonstrate that the victims' statements were unreliable, Plaintiff has added a litany of facts to the second amended complaint regarding the character of his accusers, referring to them as "drop-outs," "drug dealers," and "hoodlums," and recounting their numerous interactions with GPD police officers. (Doc. 51 at 15-20). But these additions do not demonstrate a lack of credibility for two reasons. First, even if the accusers were individuals of ill repute, of which Officer Moore was aware, their character would not necessarily be reason for Officer Moore to discount their accusations.[6] Second, while Plaintiff has alleged that GPD officers were called to the accusers' residence on several occasions and were thus familiar with the accusers, Plaintiff has not demonstrated that Officer Moore himself was familiar with the accusers and had reason to disbelieve their accusations.

In attempting to demonstrate a lack of probable cause, Plaintiff also points out that the arrest affidavit indicates that there was no physical evidence. But physical evidence is not required to establish probable cause. Eye-witness testimony, standing alone, can be sufficient to demonstrate arguable probable cause. *Foreman v. City of Port St. Lucie*, 294

---

[6]The Court further notes that there were also several victims/eyewitnesses with corroborating statements.

F. App'x 554, 557 (11th Cir. 2008) (citing *United States v. Bell*, 457 F.2d 1231, 1238 (5th Cir. 1972)).[7]

Because Plaintiff has not demonstrated that Officer Moore lacked arguable probable cause for arresting him, he has failed to establish the violation of a constitutional right. Officer Moore is therefore entitled to qualified immunity on this claim and Count IV should be dismissed with prejudice.

### 2. State-Law Claims against the Officer Defendants

### i. Count VIII—Battery against Officers Moore and Russell

Plaintiff alleges that Officers Moore and Russell committed battery upon Plaintiff when they apprehended Plaintiff in his residence on August 5, 2011, in response to a report of a burglary.  (Doc. 51 at 17-18).  Plaintiff alleges that on August 5, 2011, GPD officers "kicked the Plaintiff while he lay on the floor.  One officer jumped on the Plaintiff's back and handcuffed Plaintiff."  Plaintiff asserts that Officer Moore "directed the other officers." (*Id.* at 18).  As with Count I, Plaintiff's claim for Count VIII fails for a lack of specificity. Plaintiff does not allege which actions were taken by Officer Moore and which by Officer Russell that amounted to a battery.  The Court previously cautioned Plaintiff that if he were to allege a claim for battery against Officers Moore and Russell, he "should take care to allege specifically the acts each officer took in committing the alleged battery and should ensure that he alleges facts demonstrating that the officers acted with malicious purpose or that their conduct was wanton and willful."  (Doc. 50 at 25).

---

[7]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Plaintiff has failed to allege which acts were committed by Officer Moore and which were committed by Officer Russell that amounted to a battery.  Plaintiff cannot simply lump the actions of the two officers together and impute those actions to both Officer Moore and Officer Russell.  Having provided Plaintiff several opportunities to amend his complaint, Count VIII will be dismissed with prejudice.

### ii.  Count IX—Invasion of Privacy against Officers Moore and Russell

Plaintiff asserts that Officers Moore and Russell violated his right to privacy when they entered his home on August 5, 2011, in response to a call from a neighbor reporting a burglary.  (Doc. 51 at 46-47).  Florida recognizes a tort action for invasion of privacy, including for "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home." *Guin*, 388 So. 2d at 606 (internal quotation marks omitted).  Thus, if Officers Moore and Russell improperly entered Plaintiff's home, then Plaintiff may have a claim for invasion of privacy under Florida law.

As discussed above, under the facts alleged by Plaintiff, it appears that Officers Moore and Russell lacked probable cause to enter Plaintiff's home in response to a call reporting a burglary, without something more.  Thus, Officers Moore and Russell were not justified in entering Plaintiff's home.  Plaintiff's claim for invasion of privacy is therefore sufficiently pled.

However, Officers Moore and Russell contend as a general principle that Plaintiff's state-law claims should be dismissed because the Officer Defendants are entitled to immunity under state law.  (Doc. 56 at 8).  Namely, Florida Statute § 768.28(9) allows claims against officers in their individual capacities only where facts demonstrate that

officers acted with "bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard for human rights and safety." Officers Moore and Russell argue that Plaintiff has not alleged any facts showing that they acted with "bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard for human rights and safety."

Generally, however, the issues of bad faith and malicious purpose are questions for the jury. *See McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996) (stating that under the facts at hand the question of malice must be submitted to the fact-finder); *see also Burnett v. Miami Dade Cnty.*, No. 07-20207-CIV-SEITZ/MCALILEY, 2007 WL 1225451, at *2 (M.D. Fla. Apr. 25, 2007) (declining to determine at the motion-to-dismiss stage whether the plaintiff sufficiently alleged bad faith or malicious purpose); *Williams v. City of Daytona Beach*, No. 6:04-cv-1879-ORL-19, 2006 WL 354635, at *21 (M.D. Fla. Feb. 15, 2006) (stating that there was a material issue of fact as to whether the officers' acts constituted malice). Once again, however, Officers Moore and Russell may succeed on their arguments at the summary judgment stage if it turns out that they possessed additional facts demonstrating the existence of probable cause which would warrant entry of Plaintiff's home under the exigent circumstances theory.

### iii. Counts X & XI—False Arrest and False Imprisonment against Officer Moore

Plaintiff alleges that Officer Moore unlawfully detained him when he arrested him on August 21, 2011. (Doc. 51 at 47-56). Generally, under Florida law, false arrest and false imprisonment "are different labels for the same cause of action." *Weissman v. K-*

*Mart Corp.*, 396 So. 2d 1164, 1164 n.1 (Fla. 3d DCA 1981); *see also Andrews v. Fla. Parole Comm'n*, 768 So. 2d 1257, 1266 (Fla. 1st DCA 2000) (noting that false arrest and false imprisonment are "essentially the same tort") (Benton, J., concurring in part and dissenting in part); *but see Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010) ("False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods for committing false imprisonment."). Because Plaintiff's claims for false arrest and false imprisonment are based on identical allegations, the Court addresses them simultaneously.

False arrest is "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty. A plaintiff must show that the detention was unreasonable and unwarranted under the circumstances." *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997) (internal quotation marks and citation omitted). Under Florida law, the existence of probable cause is an absolute bar to a claim for false arrest or false imprisonment. *See Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996); *Miller v. City of Jacksonville*, 603 So. 2d 1310, 1312 (Fla. 1st DCA 1992); *see also Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990). "Probable cause for an arrest exists when an eyewitness reports witnessing a crime to police." *Foreman*, 294 F. App'x at 557 (citing *Bell*, 457 F.2d at 1238); *see also Miami-Dade Cnty. v. Asad*, 78 So. 3d 660, 670 (Fla. 3d DCA 2012).

As discussed above with respect to Plaintiff's claim for false arrest under § 1983 against Officer Moore, Plaintiff has not demonstrated that Officer Moore lacked probable cause for his arrest on August 21, 2011. Because Plaintiff has not demonstrated a lack of

probable cause, Plaintiff's claims for false arrest and false imprisonment fail and should be dismissed with prejudice.

### iv.  Count XIII—Intentional Infliction of Emotional Distress against Officer Moore

Plaintiff's claim for intentional infliction of emotional distress ("IIED") remains insufficiently pled.  Under Florida law, a claim for IIED requires a plaintiff to show (1) the conduct was intentional or reckless, (2) the conduct was outrageous, (3) the conduct caused emotional distress, and (4) the emotional distress was severe.  *Horizons Rehabilitation, Inc. v. Healthcare & Retirement Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002).  The issue of whether allegations rise to the required level of outrageous conduct is a question of law, not of fact, and is determined by the court.  *Ponton v. Scarfon*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985); *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990).  The standard for establishing outrageous conduct is extremely high.  *See Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. 5th DCA 1980) (defining outrageous conduct as "extreme behavior, beyond all bounds of decency, atrocious and utterly intolerable in a civilized community").

Plaintiff asserts that the Officer Defendants are liable for intentional infliction of emotional distress related to their conduct on (1) January 22 and 23, 2011, when Officers Flinn, Auld, and Penvose searched Plaintiff's residence, (2) August 5, 2011, when Officers Moore and Russell entered Plaintiff's residence, kicked Plaintiff, handcuffed him, and yelled insults at him, and (3) August 21, 2011, when Officer Moore arrested Plaintiff.  As to the alleged conduct of the officers on January 22 and 23, 2011, and August 21, 2011,

Plaintiff has not demonstrated that the officers' conduct was outrageous.  As to his claim of intentional infliction of emotional distress by the events of August 5, 2011, Plaintiff's factual allegations remain too sparse to allow the Court to determine whether the conduct of Officers Moore and Russell surpassed the threshold of outrageousness.[8]  This claim is dismissed with prejudice.[9]

### 3.  Punitive Damages

The Officer Defendants argue that Plaintiff is not entitled to recover punitive damages against them.  As to Plaintiff's § 1983 claims against Officer Penvose (Count II) and Officers Moore and Russell (Count III), punitive damages are available against an individual officer "under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

As to Plaintiff's claim for invasion of privacy, Florida law permits recovery of punitive damages for a claim for invasion of privacy, but requires the plaintiff to show more than an intent to commit a tort or violate a statute, i.e., it requires a showing of malice. *See Genesis Publ'ns, Inc. v. Goss*, 437 So. 2d 169, 170 (Fla. 3d DCA 1983).

---

[8] Plaintiff's allegations are too sparse because he failed to allege the actions taken by Officers Moore and Russell individually, and, as the Court explained in greater detail above, such failure warrants dismissal of Plaintiff's claim.

[9] The Court notes that it would also dismiss Plaintiff's claim for IIED because it is confusing and therefore insufficiently pled.  Plaintiff's claim for IIED is confusing because he asserts the claim against Officer Moore but then appears to assert the claim against all the Officer Defendants because he argues facts related to incidents in which Officer Moore was not involved.  (Doc. 51 at 56-59).  Thus, his claim fails to properly apprise the Officer Defendants of the grounds upon which his claim rests.

If the issue of damages need be reached, whether Plaintiff is entitled to punitive damages will be determined at that time.

## CONCLUSION

The Court provided Plaintiff several opportunities to file a complaint that stated cognizable claims.  Having been provided these opportunities, most of Plaintiff's claims are deficient and should be dismissed with prejudice, including Counts I, IV, VIII, X, XI, and XIII.

Plaintiff is also warned for the final time that the Court will not tolerate disrespectful behavior toward opposing counsel.  (See Doc. 64 at 4, 5, 8, 13 (referring to counsel's arguments as "just plain stupid," asserting that counsel's argument is an "idiotic theory," calling counsel "arrogant," and suggesting that counsel supports police brutality)).  The Court finds it strange that Plaintiff submitted an apology of sorts and then continued to behave in the same offending manner.  (Doc. 64 at 21).  None of the explanations provided by Plaintiff excuse his conduct.  He is entitled to dispute Defendants' arguments and zealously defend his position without resorting to name-calling and derogatory remarks. Pleadings filed with the Court shall be respectful.  If Plaintiff cannot behave respectfully toward opposing counsel, he may be sanctioned.

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.  Lake County's Motion to Dismiss (Doc. 53) is GRANTED.

2.  The Clerk is directed to terminate Lake County as a Defendant in this case.

3.    The City of Groveland (the "City"), Officer John Moore, Officer Charles Russell, Officer John "Flinn" (Flynn), Officer Andy Auld, and Officer Scott Penvose's

Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice (Doc. 56) is GRANTED in part and DENIED in part.

4. Counts I, IV, VIII, X, XI, XIII are DISMISSED with prejudice.

5. Counts II, III, V, VII, and IX will proceed.

6. Officer John Moore, Officer Charles Russell, and Officer Scott Penvose shall file an answer to the remaining claims (Counts II, III, and IX) of Plaintiff's complaint within fourteen (14) days of the date of this Order.

7. Plaintiff's request for sanctions against counsel for the Officer Defendants (Doc. 64 at 8) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 8th day of March, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record